**Milton ROSS, Plaintiff–Appellant,**

v.

**Doctor Eric FOGAM, Defendant–Appellee,**

**Warden, et al., Defendants.**

**No. 13–13804.**

United States Court of Appeals, Eleventh Circuit.

Jan. 5, 2016.

Milton Ross, Coastal SP–Inmate Legal Mail, Garden City, GA, pro se.

Coastal SP Warden, Coastal SP–Inmate Trust Fund, Garden City, GA, for Plaintiff–Appellant.

Cristina Maria Correia, Samuel Scott Olens, Georgia Department of Law, Atlanta, GA, for Defendant–Appellee.

Before WILSON and WILLIAM PRYOR, Circuit Judges, and BUCKLEW,* District Judge.

PER CURIAM:

This appeal involves a review of the district court's sanction of dismissing the underlying case with prejudice due to Appellant's misstatements in his application to proceed *in forma pauperis.* As explained below, this Court concludes that the district court's sanction of dismissal *with prejudice* was an abuse of discretion. Accordingly, this Court vacates the district court's judgment and remands the case for further proceedings consistent with this order.

## I. Background

On August 8, 2011, Appellant Milton Ross filed suit against Appellee Dr. Eric Fogam and others, alleging § 1983 claims that they were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. At the time of the underlying lawsuit, Ross was a prisoner proceeding *pro se,* and the following filings are relevant to this appeal.

### Prisoner Form

Since Ross was a prisoner proceeding *pro se* and asserting § 1983 claims, he was required to fill out a specific form used by prisoners asserting § 1983 claims in the Southern District of Georgia (the "Prisoner Form"). [Doc. 1]. One of the questions on the Prisoner Form asked Ross to list any other lawsuits that he had filed that dealt with the same facts as the underlying lawsuit. Ross responded that he had filed a lawsuit in the Middle District of Georgia against Dr. Burnside and others (case

number 5:06–cv–177), which resulted in a settlement in 2009.

Another question on the Prisoner Form asked Ross to list all prior lawsuits that he had brought in federal court while he had been incarcerated that dealt with facts other than those involved in the underlying action. Ross responded by identifying three lawsuits.

First, Ross stated that he had filed a lawsuit in the Middle District of Georgia against Nicholas Hurse and others (case number 5:07–cv–123), in which he had been granted *in forma pauperis* status. The Prisoner Form asked for the disposition of that case, to which Ross responded, "agreed to drop at summary judgment." [Doc. 1].

Second, Ross stated that he had filed a lawsuit in the Northern District of Georgia against Officer Mickle (case number 3:05–cv–44), in which he had been granted *in forma pauperis* status. The Prisoner Form asked for the disposition of that case, to which Ross responded, "Dismissed, statute of limitations." [Doc. 1].

Third, Ross stated that he had filed a lawsuit in the Southern District of Georgia against Dr. Fogam and others (case number 4:11–cv–114), in which he had been granted *in forma pauperis* status. The Prisoner Form asked for the disposition of that case, to which Ross responded, "Dismissed." [Doc. 1].

Another question on the Prisoner Form asked whether he had ever been granted *in forma pauperis* status in a lawsuit in federal court that was dismissed as frivolous, malicious, or failing to state a claim. Ross identified one case—the Southern

* Honorable Susan C. Bucklew, United States District Judge for the Middle District of Flori-   da, sitting by designation.

District of Georgia case against Dr. Fogam and others (case number 4:11–cv–114).[1]

### IFP Motion

In conjunction with filing his complaint and the Prisoner Form, Ross filed a motion to proceed *in forma pauperis* ("IFP motion"). [Doc. 2]. The IFP motion is a standard form that contains questions about Ross's financial status, including whether he had "received within the past twelve months any money from ... [g]ifts or inheritances? ... [or] [a]ny other sources?" [Doc. 2]. Ross answered "yes" to both of these questions. As a result, he was required to "describe each source of money and state the amount received from each during the past twelve months." [Doc. 2]. In response, Ross stated, "my mother sent me what she can out of her retirement check, if she can, she (74) years old." [Doc. 2]. Ross did not indicate in the IFP motion how much money his mother had given him or the amount of money he had received from other sources.

Additionally, Ross indicated in the IFP motion that the current balance of his prison trust account was $15.63. Furthermore, he indicated in the IFP motion that he has ten children that are dependent on his support.

Also in conjunction with filing his complaint, the Prisoner Form, and the IFP motion, Ross filed a Motion for Appointment of Counsel. [Doc. 4]. Ross attached to his Motion for Appointment of Counsel a statement showing deposits into his prison trust account. The statement showed that during the twelve months prior to August 8, 2011, a total of $1,710 was deposited into Ross's prison trust account.

On August 11, 2011, the district court granted Ross's IFP motion and ordered that Ross provide the court with a copy of his Prison Trust Fund Account Statement within thirty days. [Doc. 6]. Ross complied on August 25, 2011. [Doc. 8]. Upon review of his submission, on August 29, 2011, the district court determined that due to the substantial deposits in Ross's prison trust account, Ross "clearly ha[d] access to financial resources" and could afford to pay $200 of the $350 filing fee within thirty days. [Doc. 9]. On September 9, 2011, Ross made two payments towards his filing fee, one for $200 and one for $40.

### Screening of Ross's Complaints

On November 1, 2011, the district court screened Ross's complaint, as required by the Prison Litigation Reform Act ("PLRA"), to determine whether his claims were subject to dismissal as frivolous, malicious, or legally insufficient. The district court determined that Ross's claims were deficient, but that the deficiencies might be cured if he was given leave to amend. [Doc. 14].

On December 19, 2011, Ross filed an amended complaint. [Doc. 17]. Approximately one year later, the district court screened the amended complaint and concluded that Ross's claims against Dr. Fogam were sufficient. [Doc. 24, 29]. However, the district court found that the

---

1. This question is asked on the Prisoner Form in order to help the district court determine whether the "three strikes" provision of the Prison Litigation Reform Act bars the plaintiff from proceeding *in forma pauperis*. Pursuant to 28 U.S.C. § 1915(g), a prisoner may not bring a civil action or appeal a civil judgment *in forma pauperis* "if the prisoner has, on 3 or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."

claims against the other defendants failed and would be dismissed. [Doc. 24, 29].

### Dr. Fogam's Motion to Dismiss

Thereafter, Dr. Fogam was served with the amended complaint. On February 12, 2013, Dr. Fogam moved to dismiss Ross's amended complaint, arguing that: (1) Ross had four strikes under the PLRA; (2) Ross failed to provide accurate answers on the Prisoner Form regarding his past litigation history; and (3) Ross failed to disclose the $25,000 settlement he received in August of 2009 from his case against Dr. Burnside (case number 5:06–cv–177), and thus, he was not truthful in his IFP motion regarding his access to funds. [Doc. 32].

With regard to Ross's prior litigation history, Dr. Fogam argued that Ross had misstated three things on his Prisoner Form, which would have disclosed that Ross already had four strikes under the PLRA and was not eligible for IFP status. First, when the Prisoner Form asked for the disposition of his case against Hurse (case number 5:07–cv–123), Ross responded, "agreed to drop at summary judgment."[2] [Doc. 1]. However, the district court in that case actually granted summary judgment for the defendants after considering the record evidence before it. [Doc. 32–3]. In granting summary judgment for the defendants, the district court stated that Ross had failed to state a claim against them. [Doc. 32–3].

Second, when the Prisoner Form asked for the disposition of his case against Mickle (case number 3:05–cv–44), Ross responded, "Dismissed, statute of limitations." [Doc. 1]. While that response is true, the Prisoner Form defines dispositions to include appeals, and Dr. Fogam points out that Ross appealed the *Mickle* case. [Doc. 32–5]. On appeal, the Eleventh Circuit affirmed the district court's dismissal for failure to state a claim based on the statute of limitations. [Doc. 32–5].

Third, when Ross responded to the question on the Prisoner Form asking whether he had ever been granted *in forma pauperis* status in a lawsuit in federal court that was dismissed as frivolous, malicious, or failing to state a claim, Ross only identified one case—the Southern District of Georgia case against Dr. Fogam and others ("*Fogam I*," case number 4:11–cv–114). Dr. Fogam argues that Ross should have also listed the following three cases: (1) the summary judgment granted in the *Hurse* case (case number 5:07–cv–123), (2) the dismissal for failure to state a claim due to the statute of limitations in the *Mickle* case (case number 3:05–cv–44)[3] and (3) the appeal of the *Mickle* case, in which the Eleventh Circuit affirmed the district court's dismissal order.

### Magistrate Judge's R & R and District Court's Order Adopting It

Pursuant to 28 U.S.C. § 1915(e)(2), a court "shall" dismiss a case if it determines that the allegations of poverty in an IFP motion are untrue. Upon review of Dr. Fogam's motion to dismiss, the magistrate judge issued a Report and Recommenda-

---

**2.** In reviewing the public record in Ross's case against Hurse, this Court notes that after the defendants filed their motion for summary judgment, Ross filed a "Motion for Settlements," in which he agreed to dismiss his lawsuit if the defendants agreed to: (1) pay the court costs and attorneys' fees, and (2) not retaliate against him for filing suit. [Doc. 72 in case number 5:07–cv–123].

**3.** The *Fogam I* court specifically criticized Ross for failing to list the case against Mickle in response to this question on the Prisoner Form. [*Fogam I*, Doc. 11]. Thus, Dr. Fogam argues that Ross has no excuse for failing to list his case against Mickle in response to this question on the Prisoner Form when asked in the instant case.

tion concluding that the amended complaint should be dismissed with prejudice. [Doc. 38]. The magistrate judge based his conclusion on the fact that Ross failed to disclose the $25,000 settlement he received in August of 2009 in the lawsuit he filed in the Middle District of Georgia against Dr. Burnside and others (case number 5:06–cv–177). The magistrate judge stated that it was unnecessary to address Dr. Fogam's arguments that Ross misstated his prior litigation history and had four strikes under the PLRA, because Ross was not entitled to IFP status.

In finding that the case should be dismissed with prejudice, the magistrate judge stated:

> Ross has filed two civil actions in this Court since receiving his $25,000 settlement [both against Dr. Fogam: *Fogam I* and the instant case], and on both occasions he has sought and obtained leave to proceed IFP without mentioning that payment. Nor has he denied the defendant's assertion that these funds are the source of some, if not all,

[of] the deposits to his prison account or that the funds had not been exhausted when he applied to proceed IFP before this Court. Under these circumstances, it is reasonable to infer that Ross falsely stated, under "penalty of perjury," that he was unable to prepay this Court's filing fees due to his poverty. (Doc. 2 at 2.) He ... never disputes defendant's assertion that he received the $25,000 settlement payment or that he still has access to some portion of those funds. As a prisoner, all of Ross' basic needs (food, shelter, clothing) have been provided by the state during the entire time since he received his settlement. While several thousand dollars have been deposited to his prison account during this period, the bulk of the settlement funds have not been funneled into that account and appear to remain in his possession or control.

This is the second case in a row, covering the same subject matter, where Ross has deliberately misled the Court as to his ability to pay the filing fee.[4] Given

---

4. The magistrate judge was referring to the prior case that Ross had filed against Dr. Fogam (*Fogam I*, case number 4:11–cv–114). In *Fogam I*, Ross filed his § 1983 claim for deliberate indifference to his serious medical needs against Dr. Fogam and others. Ross moved to proceed *in forma pauperis* on May 24, 2011 and stated that he had not received money from any sources within the prior twelve months. [*Fogam I*, Doc. 6]. However, Ross attached a statement from his prison trust account to the IFP motion, which showed that he had received over $1,800 during the prior twelve months. The district court granted the IFP motion and directed Ross to provide the court with a copy of his Prison Trust Fund Account Statement within thirty days. [*Fogam I*, Doc. 8].

After Ross complied, the court issued an order for Ross to show cause as to why the case should not be dismissed for lying in the Prisoner Form and IFP motion. [*Fogam I*, Doc. 11]. The court pointed out that Ross had failed to disclose all of his prior lawsuits,

specifically, the *Hurse* case and the *Mickle* case. Additionally, the court pointed out that the *Mickle* case was dismissed as frivolous and should have been reported as such on the Prisoner Form. Finally, the court pointed out that Ross had lied in his IFP motion when he said that he had not received any money within the last twelve months given that his trust account showed significant deposits.

Ross filed his response, in which he stated that he misunderstood the questions. [*Fogam I*, Doc. 13]. The magistrate judge (who is the same magistrate judge in the underlying case) issued a Report and Recommendation, in which he stated that he believed that Ross did attempt to deceive the court by disguising his filing history and financial status. [*Fogam I*, Doc. 14]. As a result, the magistrate judge recommended the sanction of dismissal without prejudice and stated that the dismissal would count as a strike under the PLRA. [*Fogam I*, Doc. 14]. The district court adopted the Report and Recommendation and

this pattern of deceit, it is recommended that defendant's motion to dismiss (doc. 32–1) be **GRANTED,** and that Ross' complaint be dismissed **WITH PREJUDICE.** No lesser sanction will suffice to dissuade Ross, and others like him, from repeatedly and willfully lying in documents submitted to this Court.

[Doc. 38].

Ross filed his objections to the Report and Recommendation. [Doc. 40]. With respect to the $25,000 settlement, Ross stated that since his mother had taken out a loan on her home in order to pay for an attorney for him when he was arrested, he gave her $15,000 of the settlement proceeds to pay off the loan. Additionally, his mother used the remaining $10,000 to pay for five of his children's education, clothing, and books. Ross also submitted an affidavit from his mother to corroborate his financial situation and his assertion that all of the settlement proceeds had been spent.[5] [Doc. 40–1].

On July 25, 2013, the district court rejected Ross's objections to the magistrate judge's Report and Recommendation, stating:

First, even if Ross has nothing left of his settlement, he still receives money regularly from his mother. And he failed to disclose that income to the Court when seeking in forma pauperis status. That lie alone would warrant dismissal. Combined with Ross's previous misstatements in another case, the outcome recommended by the Magistrate is all the more appropriate.

Second, strikes under the PLRA are strikes, regardless of whether Ross thought they were. A mistaken belief

that he could file lawsuits without prepaying the filing fee does not exempt Ross from the PLRA.

Finally, the Court finds it dubious that Ross's alleged pain and lack of an attorney led to him making blatant mistakes on his IFP application. Ross is an accomplished litigator who has filled out that very form many times before. While he remains a pro se litigant entitled to the liberal construction of his filings, Ross is not a complete novice at applying for IFP status. Far more likely than pain causing his "mistakes" on the IFP form is Ross's desire to file yet another lawsuit without paying a filing fee.

The bottom line is that Ross's objections do nothing to undermine the R & R's reasoning or recommended outcome. The Court *ADOPTS* the R & R as the opinion of the Court and *DISMISSES WITH PREJUDICE* this action.

[Doc. 43].

On August 23, 2013, Ross filed a Notice of Appeal. [Doc. 44]. The issue before this Court is whether the district court's sanction of dismissal with prejudice was an abuse of discretion.

## II. Standard of Review

This Court reviews the sanction imposed under 28 U.S.C. § 1915 for an abuse of discretion. *See Attwood v. Singletary,* 105 F.3d 610, 612 (11th Cir.1997) (per curiam). "Discretion means the district court has a 'range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" *Zocaras v. Castro,* 465 F.3d 479, 483 (11th Cir.2006) (quoting *Bet-*

---

dismissed the *Fogam I* case without prejudice. [*Fogam I*, Doc. 18].

**5.** While not argued by Ross in his objections, this Court notes that the IFP form asked Ross

to list the money that he received during the prior twelve months, and the $25,000 settlement was received in 2009—more than twelve months prior to Ross filing the IFP motion.

*ty K Agencies, Ltd. v. M/V Monada*, 432 F.3d 1333, 1337 (11th Cir.2005)).

### III. Review of the District Court's Sanction of Dismissal with Prejudice

Ross appeals the district court's sanction, arguing that the extreme sanction of a dismissal *with prejudice* was not warranted. This Court agrees with Ross.

This Court views "dismissal with prejudice in the context of section 1915 as an extreme sanction to be exercised only in appropriate cases." *Camp v. Oliver*, 798 F.2d 434, 438 (11th Cir.1986). Dismissal with prejudice is not warranted "[i]n the absence of a finding of bad faith misstatement of assets, litigiousness or manipulative tactics." *Matthews v. Gaither*, 902 F.2d 877, 881 (11th Cir.1990). We have consistently held that "dismissal with prejudice [is] a drastic sanction to be applied only after lesser sanctions are considered and found inadequate." *Camp*, 798 F.2d at 438–39.

The district court ordered the sanction of dismissal with prejudice because Ross regularly received money from his mother and failed to specifically disclose that income in his IFP motion. Furthermore, the district court stated that combining that lie with his previous misstatements in *Fogam I* made the sanction of dismissal with prejudice all the more appropriate. As explained below, this is not an appropriate case for such an extreme sanction.

First, while Ross did not specifically state in his IFP motion that he had received $1,710 from his mother during the prior twelve months, he did state that he had received money from his mother and he attached a statement showing the deposits into his trust account to his Motion for Appointment of Counsel (which was filed at the same time as his IFP motion). By preemptively filing his trust account

statement, which showed the deposits into his trust account, his actions can hardly be described as a bad faith misstatement of his assets. *See id.* at 438.

In *Camp*, the prisoner, Camp, filed an IFP motion in which he stated that he had no money in his prison trust account. *See id.* at 437. However, Camp attached to his IFP motion a statement of his prison trust account showing that he had an average monthly balance of $72.65 at the time. *See id.* The defendants filed a motion to dismiss, arguing that Camp had lied in his IFP motion about his access to funds. *See id.* The district court agreed with the defendants and dismissed the case with prejudice. *See id.*

Camp appealed, and this Court noted that "[t]he purpose of section 1915 permitting dismissal if the affidavit of poverty is untrue is not to punish the litigant whose affidavit contains an insignificant discrepancy, but to weed out the litigant who falsely understates his net worth in order to obtain *in forma pauperis* status to which he is not entitled based upon his true financial worth." *Id.* at 438 n. 3. This Court reversed the district court, stating the following:

[T]he sole basis for dismissal of Camp's petition was an inaccurate answer in his affidavit. There was no finding of bad faith, litigiousness or manipulative tactics. Indeed, in his petition to proceed *in forma pauperis*, Camp attached a certification by the prison financial officer attesting to Camp's actual bank balance and thus belied any inference of intentional misrepresentation. Moreover, upon receipt of the defendant's motion to dismiss, Camp filed a more current bank statement, and tendered twenty dollars as partial payment of fees. The district court first should have determined whether considering the facts as a whole, Camp's inaccuracy

foreclosed *in forma pauperis* eligibility. If, indeed, it so found, then the court in the exercise of its statutorily conferred discretion, should have applied less severe sanctions: revoking *in forma pauperis* status and accepting the partial payment of filing fees or allowing Camp a reasonable time in which to pay the entire fee before dismissing the petition with prejudice, or alternatively, dismissing without prejudice. We hold, therefore, that the district court abused its discretion by automatically dismissing Camp's petition with prejudice.

*Id.* at 438.

Likewise, in the instant case, Ross preemptively provided the court with a statement of his prison trust account, which belies any inference of an intentional misrepresentation of his access to funds. *Id.; see also Gaither*, 902 F.2d at 881 (per curiam) (considering the fact that the prisoner submitted a statement of his prison trust account when requested by the district court to support the appellate court's conclusion that the sanction of dismissal with prejudice was not warranted as a sanction for the prisoner's misrepresentation that he had no money in his prison trust account when he actually had $25.02).

Dr. Fogam points out that there are cases in which this Court has affirmed a dismissal with prejudice as a sanction under § 1915. *See Dawson v. Lennon,* 797 F.2d 934, 935–36 (11th Cir.1986) (per curiam); *Attwood,* 105 F.3d at 613. Dr. Fogam's reliance on those cases is misplaced, as those cases are clearly distinguishable.

In *Dawson,* the prisoner, Dawson, moved for IFP status and filed an affidavit stating that he could not afford to pay the filing fee. *Dawson,* 797 F.2d at 935. The defendants argued that Dawson had lied, as he had access to significant resources and other courts had previously deter-

mined that he had access to substantial assets. *See id.* In filing his IFP motion, Dawson did not allude to the fact that other courts had previously determined that he had access to substantial assets, nor did he explain that there was a change in circumstances that would render the prior courts' determinations inapplicable. *See id.* As a result, the district court determined that Dawson did not disclose all of his available assets and had filed the IFP motion in bad faith. *See id.*

Dawson appealed, and this Court noted the standard to be applied: "a district court has the discretion to dismiss a case with prejudice where a plaintiff has in bad faith filed a false affidavit of poverty." *Id.* In affirming the district court, this Court stated the following:

> Dawson's behavior in attempting to claim indigent status while failing to draw the court's attention to previous authoritative determinations of his lack of indigency is sufficient evidence of bad faith to support the district court's exercise of discretion.... The clear pattern of attempts to deceive the courts on his financial status in this and other cases justifies the district court's imposition of the severe sanction of dismissal with prejudice. The district court clearly acted within its discretion.

*Id.* at 935–36.

Likewise, in *Attwood,* the prisoner, Attwood, moved to proceed IFP and stated that he had no access to funds. *See Attwood,* 105 F.3d at 611. The defendants moved to dismiss as a sanction under § 1915. *See id.* Upon review, the district court dismissed the case with prejudice, concluding that Attwood had intentionally misstated his income in order to obtain IFP status. *See id.* To support this conclusion, the district court noted that in a case brought in another court approximately a year earlier, that court held a

two-day hearing on Attwood's financial status and concluded that he had deliberately filed a false application to proceed IFP. *See id.* at 611–13. Additionally, in another case, another court had found that Attwood had filed a false affidavit to support his request for IFP status. *See id.* at 612.

Attwood appealed, and this Court affirmed. *See id.* at 613. This Court stated that the district court properly imposed the sanction of dismissal with prejudice due to Attwood's false claims of indigency and failure to disclose that other courts had determined that he was not indigent. *See id.*

The instant case is distinguishable from *Dawson* and *Attwood.* We acknowledge that the *Fogam I* court found that Ross had lied in his IFP motion because he had indicated that he had not received any money within the prior twelve months. However, Ross attached a statement of his prison trust account directly to his IFP motion in *Fogam I,* so it can hardly be said that Ross's misstatement in his IFP motion in that case was a bad faith attempt to misstate his financial status. Furthermore, Ross specifically indicated that his mother gave him money within the last twelve months when he submitted his IFP motion in the instant case. This is not a bad faith pattern of deliberate lying to the court that was shown in both *Dawson* and *Attwood.* Thus, *Dawson* and *Attwood* are not controlling, and instead, based on *Camp,* the district court erred in imposing the extreme sanction of dismissal with prejudice.

Dr. Fogam attempts to combine Ross's misstatements in *Fogam I* with his misstatements in the instant case in order to show a pattern of misstatements that constitute bad faith by Ross. However, in *Fogam I,* Ross failed to disclose his lawsuits against Mickle and Hurse, but he did disclose those lawsuits on the Prisoner Form in the instant case. In *Fogam I,* Ross failed to specifically disclose in his IFP motion that his mother gave him money, but he attached a statement of his prison trust account directly to his IFP motion in that case and he disclosed that his mother gave him money in his IFP motion in the instant case. The mistakes in *Fogam I,* combined with the mistakes in the instant case, do not rise to the level of bad faith that would warrant a dismissal with prejudice of the instant case.

Furthermore, Ross's mistakes in the instant case were not prejudicial. In the instant case, Ross twice provided a statement of his prison trust account to the court.[6] While the court may have overlooked the statement the first time he submitted it, the court clearly considered it on August 29, 2011 (two years prior to dismissing the case) and did not determine that the mistake necessitated dismissal. Instead, upon review of the statement, the district court simply ordered Ross to immediately pay a $200 partial filing fee. Why this same mistake was later determined by the district court to be a lie that, on its own, warranted dismissal, is unclear.

Regarding Ross's mistakes in the instant case regarding his prior litigation history on the Prisoner Form, this Court notes that the magistrate judge specifically declined to address the issue and the district court did not make any specific findings about them. It is not clear to this Court that the mistakes Ross made reporting the dispositions of his cases against Hurse and Mickle were made in bad faith. Furthermore, it is not clear that accurately disclosing those dispositions would have even resulted in a finding that Ross had three strikes under the PLRA, and the

---

6. He provided it on August 8, 2011 and August 25, 2011.

district court did not specifically make such a finding.

## IV. Conclusion

Accordingly, this Court concludes that the district court erred in imposing the extreme sanction of dismissal with prejudice. As such, this Court vacates the judgment of the court below dismissing Ross's amended complaint with prejudice and remands this case to permit Ross to proceed under his amended complaint.

**VACATED AND REMANDED.**